# Tyrrill *versus* Lamb.

1. Where an amendment substitutes a new and different cause of action and debars the defendant of the privilege of pleading the Statute of Limitations, it will not be allowed.

2. Per MERCUR, J.—We think no amendment, except one merely formal, should be allowed without notice to the opposite party. The court will then be prepared to make the proper order relating thereto.

November 24th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

Error to the Court of Common Pleas of *Crawford county:* Of October and November Term, 1880, No. 269.

This action was originally covenant brought June 13th 1870, by J M. Tyrrill, administrator of R. S. Tyrrill, deceased, and F.

[Tyrrill v. Lamb.]

Simmons, to the use of P. Crossman, against Alfred Lamb and John Lamb.

On the 6th of January 1865, Alfred Lamb and John Lamb, executors of John Lamb, deceased, agreed, by writing under seal, to sell to Robert Tyrrill, F. Simmons and J. P. Pennock one piece of land in Harmony township, Venango county, Pa., containing one hundred acres, for the sum of $4000; and one other piece of land in Deerfield township, Warren county, containing ninety acres, for the sum of $5000, in all $9000 for the two pieces of land, to be paid $1000 in hand and the balance in thirty days; and, further, to account to first parties for the one-fourth of the excess they might sell said lands for over and above the purchase price. January 14th 1865, endorsed on said article is a receipt for $1000, signed A. & J. Lamb, executors, in the handwriting of Alfred Lamb. Immediately following said receipt is an agreement also signed A. & J. Lamb, and in the handwriting of Alfred Lamb, extending the time for four days. During this four days' extension, one Wesley Martin, who alleged he was acting for the plaintiffs in this suit as well as for himself, sold the property, or two farms, to Zenus Newell for $21,000. Subsequently to this sale some days Newell received from the Lambs a deed for the Deerfield tract, and paid on his contract with plaintiff $10,000, as follows, viz.: $4000 to Martin for plaintiffs, and $6000 to the Lambs, whose receipt therefor is endorsed on the original article between the plaintiffs and the Lambs. This receipt is dated February 9th, and is signed A. & J. Lamb. Both the receipt and signature were in the handwriting of John Lamb. At the time that this $10,000 were paid and a deed taken for the Deerfield tract, the Lambs were not yet ready to make a deed to the Harmony tract, the title to which was yet in the Commonwealth. Newell was ready to pay the remaining $10,000 whenever the plaintiffs could make or procure for him a good and sufficient deed to this tract. This was well understood at the time by all the parties in interest, hence the agreement mentioned in the following receipt:

"PRESIDENT, February 9th.

Received by the hand of Z. Newell, six thousand dollars on the within, for which we have made deed of the piece of land in within-mentioned Deerfield township, and given to said Newell an agreement to make deed for other piece as soon as we perfect title, his paying to us *and second parties* ten thousand dollars."

In pursuance of this agreement, the Lambs employed Martin to go to Harrisburg and procure a patent. This he accomplished after making two trips. The Lambs were now ready to make title to the Harmony tract, and Newell was ready to pay the remaining $10,000. The parties, that is Martin, acting for the plaintiffs, as he alleged, Alfred Lamb acting for himself and John, and Newell,

15 NORRIS—30

[Tyrrill *v.* Lamb.]

went to Oil City where Newell's money was deposited. Alfred Lamb and Martin made a calculation and agreed as to the amount each was to receive of the $10,000. Newell received his title made his check to Alfred Lamb for the $10,000, who received the money on it or had it placed to his credit in the bank, and refused to pay any part of it to plaintiffs or to Martin for them. It is this money, or their proportion of this $10,000, and its interest amounting now to over $8000, which defendant retained, for which plaintiffs brought this suit. The action was originally covenant and brought to June Term 1870.

The plaintiffs concluding that they had mistaken the form of the action, in September 1873 moved for leave to change it from covenant to assumpsit, which motion was granted.

J. P. Pennock, though named as a party to the contract, never signed it. There was no assignment of the contract to P. Crossman, nor any evidence that he has a right to sue. The contract was sealed. Martin claimed to have a contract with Alfred Lamb for a division of the money, and alleged that Lamb did not divide as he (Martin) thought he ought to do. There was no evidence of any written contract between the Lambs and Martin, or of any agreement between them, nor that the former knew of any interest of Martin in the matter, except that they had employed him to go to Harrisburg to take out a patent for the land. Martin was not a party to the suit upon the record in any form. The names of the parties as they stood upon the record at the time of trial, were Robert S. Tyrrill and Franklin Simmons, now for use of P. Crossman, against Alfred Lamb and John Lamb. The latter was not served with process and did not appear. The declaration was against both, and alleged that the defendants received money which belonged to the plaintiffs, that is, to J. N. Tyrrill, administrator of Robert Tyrrill, F. Simmons and J. P. Pennock, and these plaintiffs sought to recover from Alfred Lamb, upon his implied assumption to pay over money he was alleged to have received. To this declaration the defendant, Alfred Lamb, pleaded *non assumpsit*, *non assumpsit infra sex annos*, payment, and payment with leave, and also a special plea, which averred that the plaintiffs had changed their cause of action in this suit more than six years after the same accrued, and that the Statute of Limitations had barred the same before such change. The court below granted a motion for a nonsuit at the conclusion of the plaintiffs' testimony, and afterwards refused to take it off, which action of the court was assigned for error by plaintiffs who took this writ.

*H. L. Richmond & Sons* and *J. B. Brawley*, for plaintiffs in error.—If the plaintiff had the right under the Act of 1871, with the sanction of the court, to change his form of action, and, availing himself of this right, did change it, that fact had no effect, one

[Tyrrill v. Lamb.]

way or the other, on the running of the statute. If the action is commenced within six years, it does not matter that its form was changed after the six years had run. The defendant cannot avail himself of that fact to plead the statute in bar of a recovery : Trego v. Lewis, 8 P. F. Smith 469 ; Steffy v. Carpenter, 1 Wright 43 ; Smith v. Bellows, 27 P. F. Smith 441 ; Tatham v. Ramey, 1 Norris 130 ; Wilhelm's Appeal, 29 P. F. Smith 121. The necessity. for which the Act of 1871 provides a remedy was upon us. We· could not recover in covenant because there was no condition of the case under which we could charge breach of covenant. Our right to the money we claimed depended not upon any stipulations contained in the articles of agreement, but upon what occurred subsequently, when Newell received the deed for the Harmony tract and paid over the last $10,000. Martin and Alfred Lamb had by settlement ascertained and determined the proportion each was to receive of the last $10,000. In the case at bar our only purpose in changing the form of action was that we might have a " decision of the case upon its merits." This we were apprehensive we could not reach in covenant.

*C. Heydrick* and *Roger Sherman*, for defendant in error.—The court had nothing whatever before it to show that such change was necessary to a proper decision of the cause upon its merits, and the costs were not paid up to the time of the amendment. We contend that payment of costs, and showing reason why the amendment should be allowed, were positive requirements of the Act of Assembly as conditions precedent to the relief asked for. If the action was not lawfully changed from covenant to case, the former must have been what the court below tried or ought to have tried. There was no evidence to sustain an action of covenant. All the covenants of the defendants as set forth in the article of agreement had been fully performed. If the form of action was properly changed, was there any evidence to sustain the declaration in assumpsit for money had and received ? There was certainly no express contract, written or oral, by which Alfred Lamb was obligated to pay the plaintiffs upon the record any money. The Act of Assembly permits a change in the form of action, but not of the cause, by amendment : Shoneman v. Fegley, 7 Barr 433 ; Smith v. Bellows, 27 P. F. Smith 441; Wilhelm's Appeal, 29 Id. 121.

Mr. Justice MERCUR delivered the opinion of the court, January 3d 1881.

The right of amendment has been very much enlarged by several Acts of Assembly. The Act of 10th May 1871 gives power to the court, to change the form of action if the same shall be necessary for a proper decision of the cause on its merits. Although the power is thus given, it should be exercised with due regard to the

[Tyrrill *v.* Lamb.]

rights of both parties. It should not be allowed so as to deprive the opposite party of any valuable right: Trego et al. *v.* Lewis, 8 P. F. Smith 468; Kaul et al. *v.* Lawrence et al., 23 Id. 410; Kille *v.* Ege, 1 Norris 102; Leeds *v.* Lockwood, 3 Id. 70. While in a proper case the court may permit the form of action to be changed by amendment, yet the cause of action cannot be so changed: Shoneman *v.* Fegley, 7 Barr 433; Trego *v.* Lewis, 8 P. F. Smith 468; Royse *v.* May, 12 Norris 454. When amendments are allowed, a just regard for the rights of all persons interested sometimes requires that the effect of the amendment should be qualified. We think no amendment, except one merely formal, should be allowed without notice to the opposite party. The court will then be prepared to make the proper order relating thereto: Kille *v.* Ege, *supra*; Leeds *v.* Lockwood, *supra*.

The facts in this case show the suit was commenced in covenant, in 1870. After it had been pending for nearly three years, on motion, the court permitted the form of action to be changed from covenant to case. During all that time the cause of action was for a breach of the defendant's contract under seal, with the plaintiffs. Under the changed form of action, it became a claim for money had and received by Alfred Lamb for the use of one Martin, and the attempt was to enforce it in this action, for the benefit of Crossman. If any cause of action existed in favor of the legal plaintiffs, covenant was the proper form. The plaintiffs gave in evidence an article of agreement under seal. It was made between Alfred Lamb and John Lamb, as executors of John Lamb of the first part, and the plaintiffs, Tyrrill and Simmons, of the second part. It provided for a sale from the former to the latter of two pieces of land, in consideration of a sum specified to be paid therefor. Before the contract was fulfilled by either party thereto, the vendees therein sold the land to one Newell. He paid to the Lambs the residue of the purchase-money due them, and they made and delivered deeds for the lands, to him. It appears when Newell paid this money, in February 1865, to Alfred Lamb, Martin claimed and demanded of Lamb, a portion thereof, which was refused. That money is the sum claimed in this suit.

As the only agreement entered into between the legal plaintiffs and the defendants had been fully performed, no right of action under it existed in them. Neither Martin nor Crossman was a party thereto. It does not, therefore, appear that an action, in any form, could be maintained by the plaintiffs against the defendants. If any action for money had and received arose against the defendants, it did not accrue to the plaintiffs; but to Martin alone. His cause of action was not their cause of action. He did not derive it from them. Their claim was satisfied on the land being conveyed. They had no claim for money against the defendants.

Under precisely what agreement the claim of Martin rested is

[Tyrrill *v.* Lamb.]

not clearly shown. It was under some express or implied contract between him and the defendants. It was, therefore, in his own right, and should have been enforced in his own name as the legal party. His right of action accrued in February 1865. The amendment changing the form of action, was made in September 1873, being more than eight and a half years after the alleged right of action accrued. The effect now claimed for the amendment is a right to substitute a new and different cause of action. This cannot be allowed : Royse *v.* May, *supra.* The case of Smith *v.* Bellows, 27 P. F. Smith 441, does not remove this difficulty from the pathway of the plaintiffs. There the cause of action was the same.

It was too late to commence and maintain a new action based on the alleged agreement with Martin. The right of the defendants to interpose a plea of the Statute of Limitations was to them valuable. This amendment could not deprive them of that right. The form of action having been changed does not prevent us from now declaring its effect : Kille *v.* Ege, *supra ;* Leeds *v.* Lockwood, *supra.*

The learned judge was therefore right in ordering a nonsuit, and in refusing to take it off.

Judgment affirmed.