## Stubbs v. Frazer

*Edgar B. Bayley,* for plaintiff.
*William F. Martson,* for defendants.

SHUGHART, *P.J.,* July 8, 1981—Plaintiff, Donna Stubbs, was seriously injured when the car she was

driving collided with the rear end of a moving van, owned by defendant Buffalo Van and Storage Company and operated by defendant Michael Frazer. The van was stranded on the Rossmoyne Road — Wesley Drive exit of U.S. Route 15 in Lower Allen Township when the collision occurred. Following a jury trial, a verdict was returned on February 27, 1981, finding defendants 25 percent negligent and plaintiff 75 percent negligent, thus denying the plaintiff a recovery. Plaintiff filed a motion for a new trial on March 5, 1981, based on the refusal of the trial judge to charge on the doctrine of wanton misconduct. Plaintiff contends that if such conduct on the part of defendants had been found, plaintiff's contributory negligence would not bar a recovery by her. The first question for our resolution is whether the evidence presented was sufficient to require the court to charge on wanton misconduct.

Wanton misconduct is a nebulous concept difficult to define and apply. It involves conduct which is short of wilful, Evans v. Philadelphia Transportation Company, 418 Pa. 567, 212 A.2d 440 (1965), but more than grossly negligent. Kasanovich v. George, 348 Pa. 199, 34 A.2d 523 (1943). "[W]antonness exists where the danger to the *plaintiff, though realized,* is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." Id. at 203, 34 A.2d at 525 (Emphasis added).

The Restatement (Second) of Torts §500[1] provides that for one to be guilty of reckless disregard of

---

1. The special note to this section of the Restatement indicates that the conduct described in §500 is often called "wanton or wilful misconduct." Section 500 of the Restatement of Torts was cited with approval in the Evans case supra.

the safety of another, the tortfeasor's conduct must create a risk of harm which is substantially greater than that necessary to make one's conduct negligent. Comment g to §500 indicates that "reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man."

Thus, wanton misconduct involves a conscious indifference to a risk of serious danger such that the tortfeasor's conduct is characterized by a willingness to inflict injury. For example, wanton misconduct is shown where the tortfeasor disregards an existing peril, see, e.g., Kasanovich v. George, supra (motorman of a streetcar never reduced the speed of the streetcar although decedent was visible along side the tracks, for a distance of 200 feet), or where there is such a high degree of danger that injury is inevitable. See Fugagli v. Camasi, 426 Pa. 1, 229 A.2d 735 (1967) (vehicle operated at 90 miles per hour while driver was intoxicated).

In Corona v. Pittsburgh Railways Company, 418 Pa. 136, 209 A.2d 425 (1965), it was stated:

"In order for the question of wanton misconduct to be a jury question . . . it [is] necessary to establish that the [tortfeasor] had knowledge of sufficient facts to cause a reasonable person to realize the perilous position of [the plaintiff] for a sufficient period of time before the accident to give him a reasonable opportunity to take means to avoid the collision and, despite this knowledge, he manifested a reckless disregard of the existing danger and peril." Id. at 142, 209 A.2d at 428.

In the case at bar, the evidence shows that between the hours of 1:00 and 2:00 a.m. on September 23, 1978, the Buffalo moving van was south

bound on U.S. Route 15. The vehicle was driven by defendant Frazer. Also present in the truck was Kevin Connolly, Frazer's partner. The weather was clear and the roadway was dry. When the truck was in the vicinity of the Slate Hill Road interchange ts lights began to flicker; however, Frazer drove the truck by this exit. When he reached the Rossmoyne Road-Wesley Drive interchange, one mile further, he exited Route 15 and proceeded along the main portion of the exit ramp with the lights still flickering. The vehicle eventually stalled and its lights went out as it came to rest on the travelled portion of the exit ramp after travelling two tenths of a mile. Within seconds after the truck stopped, plaintiff's automobile hit the back of the disabled vehicle.

Plaintiff argues that a charge on wanton misconduct was warranted because Frazer drove the truck by one exit without leaving Route 15, because he never pulled the truck over to investigate the nature and extent of the electrical problems, and because he continued to drive on the travelled portion of the Rossmoyne Road-Wesley Drive exit ramp with the truck gradually losing speed. We do not believe that Frazer's actions warranted a charge on wanton misconduct. It is clear that Frazer did not disregard the existing danger. He testified that as soon as he began experiencing difficulties with the vehicle he turned on the four-way flashers. Furthermore, he drove only one mile before exiting Route 15 and as soon as the truck stopped Frazer told his partner to look for the flares. Unfortunately, the accident occurred before they had an opportunity to place flares around the disabled truck. While Frazer's course of conduct may have been negligent, it certainly was not in reckless disregard of the existing danger. Admittedly, there were other options available to Fra-

zer, but considering the hour, it is understandable that Frazer would continue toward a place of safety rather than stop the truck and risk being stranded along the highway.

Williams v. Philadelphia Transportation Company, 219 Pa. Super. 134, 280 A.2d 612 (1971), the only case relied on by plaintiff, does not support a conclusion that there should have been a charge on wanton misconduct. In Williams, the injured party's car was stranded at an intersection in full view and was struck by an oncoming bus despite the fact that the injured party was waving her arms and blowing the horn of the stranded vehicle. On these facts it was held that the jury could find the bus driver guilty of wanton misconduct. In our case, there is no evidence that Frazer had any knowledge at anytime that plaintiff was behind him. In fact, here it is Frazer's position which is comparable to that of the injured party in the Williams case: he was the one stranded in a position of peril with a disabled vehicle and it was his vehicle which was struck form the rear despite the fact that the exit ramp is virtually straight. The Williams case would more readily support an argument that it was the plaintiff who was guilty of wanton misconduct.

Plaintiff also contends that the truck had a history of prior electrical problems and that this showed wanton misconduct on the part of defendants. It is important to note that there was also substantial evidence presented by defendants that there were no prior electrical problems. Needless to say this was an issue of fact which was resolved by the jury, apparently in favor of defendants. However, even if resolved in favor of plaintiff, the history of electrical problems merely made it foreseeable that the problems might reoccur and therefore was proof of negligence, not wanton misconduct.

Defendants contend that even if they were guilty of wanton misconduct, the contributory negligence of plaintiff still barred a recovery. On the other hand, plaintiff maintains that wanton misconduct negates the defense of contributory negligence on her part. Although not necessary for our decision today, we are moved to address plaintiff's contention.

Our comparative negligence statute, found in §7102 of the Judicial Code of July 9, 1976, as amended, 42 Pa. C.S. §7102, applies exclusively to negligence. It does not compare fault as defendant urges. Our appellate courts have long taken the position that wanton misconduct is not merely a high degree of negligence. It is different both in degree and in kind from even the grossest negligence. Kasanovich v. George, supra. Accordingly, the comparative negligence statute does not apply to wanton misconduct and a plaintiff should not be barred from recovery regardless of his negligence if the defendant's actions constitute wanton misconduct. In this respect, the rule that contributory negligence does not bar a plaintiff from recovery if defendant is guilty of wanton misconduct, see, e.g. Kasanovich v. George, supra, is not changed by the comparative negligence statue. [2]

---

2. In reaching our decision we are not unmindful of decisions which have chosen to treat wanton misconduct as different from ordinary negligence in degree only and which have therefore held that it can be compared with ordinary negligence. See, e.g. Bielski v. Schulze, 16 Wis. 2d 1, 114 N.W.2d 105 (1962). However, because our appellate courts have clearly indicated that wanton misconduct is different from negligence both in degree and in kind, it is unlikely that the doctrine of wanton misconduct will be abolished in Pennsylvania. In Draney v. Bachman, 138 N.J. Super. 503, 351 A.2d 409 (1976), the court followed the principle that wanton miscon-

## ORDER OF COURT

And now, July 8, 1981, for the reasons appearing in the opinion filed this date plaintiff's motion for a new trial is hereby denied.

---

duct is different in kind from negligence and that therefore the comparative negligence statute should not apply. We find Draney to be persuasive.