J. A16023/17

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| CAROL MEERHOFF, INDIVIDUALLY, | : | IN THE SUPERIOR COURT OF |
| AND AS ADMINISTRATRIX OF THE | : | PENNSYLVANIA |
| ESTATE OF JEREMY MEERHOFF, | : | |
| DECEASED, AND STEVEN LITTLE, | : | |
| AN ADULT INDIVIDUAL | : | |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| DALE McCRAY; JAMES McCRAY; | : | |
| McCRAY ALUMINUM AND | : | |
| BUILDER'S SUPPLY COMPANY, INC.; | : | |
| THE NORTHWESTERN RURAL | : | |
| ELECTRIC CORPORATION AND | : | |
| OHIO CORPORATION, | : | |
| PENNSYLVANIA ELECTRIC COMPANY | : | No. 1392 WDA 2016 |
| T/D/B/A PENELEC, A WHOLLY OWNED | : | |
| SUBSIDIARY OF FIRST ENERGY | : | |

Appeal from the Order Entered August 19, 2016,
in the Court of Common Pleas of Erie County
Civil Division at No. Docket No. 11079-2015

BEFORE:  STABILE, J., FORD ELLIOTT, P.J.E., AND STRASSBURGER, J.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:    FILED: SEPTEMBER 29, 2017

Appellants Carol Meerhoff, individually, and as Administratrix of the

Estate of Jeremy Meerhoff ("Mr. Meerhoff"), deceased, and Steven Little

("Mr. Little"), plaintiffs in the court below, appeal the order entered August 19,

_____

* Retired Senior Judge assigned to the Superior Court.

2016, granting summary judgment in favor of defendants/appellees.[1] We affirm.

In the early morning hours of October 29, 2012, Mr. Meerhoff was killed and Mr. Little was seriously injured in a devastating fire that consumed Donald McCray's 100-year-old farmhouse in Spartansburg. Mr. Little is Mr. McCray's grandson and had permission to use the residence; however, Mr. McCray was not home at the time and was unaware that Mr. Little would be staying in the farmhouse that night.

Earlier that evening, Mr. Meerhoff and Mr. Little, both of whom had been drinking heavily, drove recklessly around the property in Mr. McCray's pickup truck, damaging power lines and farm equipment. The cause of the fire was never determined; however, appellants alleged, inter alia, that Mr. McCray and McCray Aluminum were negligent for failing to install smoke detectors and/or carbon monoxide ("CO") monitors.

The trial court determined that since Mr. McCray's farmhouse was a private, non-commercial residence, he had no legal duty to install and maintain smoke detectors or CO monitors. Appellants also alleged that Pennsylvania Electric Co. ("Penelec") was negligent for failing to properly mark a guy wire on the property; however, the trial court determined that

---

[1] Donald E. McCray died on May 4, 2017. On July 10, 2017, Dale McCray and James McCray, Donald E. McCray's sons and co-executors of his estate, made application pursuant to Pa.R.A.P. 502(a) to substitute themselves for Donald E. McCray as party-defendants/appellees. The application was granted on August 30, 2017. The caption has been amended accordingly.

(a) appellants failed to demonstrate that the cause of the fire was electrical, and (b) any negligence on the part of Penelec was far exceeded by Mr. Meerhoff's and Mr. Little's wanton misconduct in driving drunk around the property the night of the incident, damaging structures and electrical wires including the guy wire which was attached to a yard pole.

The trial court has set forth the history of this case as follows:

> The instant matter is before the Pennsylvania Superior Court on the appeal of Carol Meerhoff, individually and as Administratrix of the Estate of Jeremy Meerhoff, deceased, and Steven Little, an adult individual (both hereafter referred to as "Appellant[s]"), from this Trial Court's Opinion and Order dated August 19th, 2016. By said Opinion and Order dated August 19th, 2016, this Trial Court granted the individual Motions for Summary Judgment of Donald McCray, McCray Aluminum and Builder's Supply Company, Inc., and Pennsylvania Electric Company, t/d/b/a Penelec, a wholly owned subsidiary of First Energy (hereafter referred to as "Appellees") as this Trial Court concluded: (1) Appellants failed to demonstrate successfully a cause of action for negligence against Appellees Donald McCray, McCray Aluminum [] and [] Penelec []; (2) Within the ten [10] day time period allotted after the undersigned judge found Plaintiff[s'] proposed expert, James L. Glancey, Ph.D., unqualified as an [sic] relevant expert in this case by Order dated July 14th, 2016, Appellants failed to produce a new expert qualified to demonstrate (a) whether Appellee Donald McCray's private, non-commercial residence was equipped with smoke detectors, and (b) whether the fire occurring at Appellee Donald McCray's private, non-commercial residence was electrical in nature; (3) Appellants failed to adhere to the time restraints for filing responses to Appellee McCray Aluminum[]'s First Set of Requests for Admissions, pursuant to Pennsylvania Rule of Civil Procedure 4014(b), thereby admitting the allegations contained therein; (4) Appellants failed to

produce sufficient evidence to "pierce the corporate veil" in order to hold Appellee McCray Aluminum [] liable for Jeremy Meerhoff and Steven Little's injuries; and (5) Appellants failed to demonstrate successfully the "negligence" of the Appellees was greater than the "wanton comparative negligence" of Jeremy Meerhoff and Steven Little, thereby barring Appellants' recovery.

Procedural History

Appellants filed a Motion to Transfer Venue on April 1st, 2015, which was granted and the instant civil action was transferred to Erie County, Pennsylvania.

Appellants filed a Praecipe for Writ of Summons and a Praecipe for Issuance for Rule to File Complaint on April 1st, 2015. Appellants filed a Complaint in Civil Action on April 1st, 2015. Appellee [] Penelec filed an Answer, New Matter and Cross-Claims on April 23rd, 2015. Appellee McCray Aluminum [] filed an Answer, New Matter and Cross-Claim on May 22nd, 2015. Appellee Donald McCray filed an Answer, New Matter and Cross-Claim on May 26th, 2015.

By Stipulation on May 11th, 2015, all allegations against Appellee Donald McCray and McCray Aluminum [] for recklessness and punitive damages were withdrawn. By Stipulation on May 15th, 2015, First Energy Corporation was dismissed from the instant civil action. By Stipulation on December 21st, 2015, Northwestern Rural Electric Cooperative Association, Inc. was also dismissed from the instant civil action.

Appellee [] Penelec filed a Motion to Strike Report of James L. Glancey on May 16th, 2016. Appellants filed a Response to Defendant Penelec's Motion on May 31st, 2016. Following a hearing on June 30th, 2016, this Trial Court rescheduled the hearing on Appellees' Motions for Summary Judgment, originally scheduled for August 15th, 2016, to July 26th, 2016, by agreement of all counsel in order to expedite the hearing on Appellees' Motions for

Summary Judgment, and this Trial Court deferred ruling on Appellee [] Penelec's Motion to Strike Report of James L. Glancey.

Appellants presented a Motion for Clarification to this Trial Court in Motion Court on July 14th, 2016. At that hearing, this Trial Court, having heard argument and after reviewing relevant evidence, granted Appellee [] Penelec's Motion to Strike Report of James L. Glancey and denied Appellants' Motion for Clarification.

Appellee [] Penelec filed its Motion for Summary Judgment and a Brief in Support on June 2nd, 2016. Defendant McCray Aluminum [] filed its Motion for Summary Judgment and a Brief in Support on June 7th, 2016. Defendant Donald McCray filed his Motion for Summary Judgment and a Brief in Support on June 17th, 2016. Following the hearing on Appellees' Motions for Summary Judgment on July 26th, 2016, and by Opinion and Order dated August 19th, 2016, this Trial Court granted Appellee[s'] individual Motions for Summary Judgment and dismissed Appellants' civil action against the Appellees with prejudice.

Appellants filed a Notice of Appeal to the Pennsylvania Superior Court on September 15th, 2016. This Trial Court filed its [Pa.R.A.P.] 1925(b) Order on September 19th, 2016. Appellants filed their Concise Statement of Errors Complained of on Appeal on October 10th, 2016.

Trial court opinion, 11/1/16 at 1-4.

Appellants have raised the following issues for this court's review:

1. Did the court err in finding that Appellee, Donald McCray, does not have a legally recognized duty to install smoke and/or carbon monoxide detectors in his private, non-commercial residence?

2. Did the court err in finding that Appellants cannot prove Appellee, Donald McCray's,

- 5 -

private, non-commercial residence was not equipped with working smoke detectors without resorting to speculation?

3.  Did the court err in finding Appellants failed to adhere to the time restrain[t]s for responding to Appellee McCray Aluminum[]'s First Set of Requests for Admissions, pursuant to Pennsylvania Rule of Civil Procedure 401[4](b) as Appellee's Requests for Admissions were untimely?

4.  Did the court err in finding Appellants did not present sufficient evidence to "pierce the corporate veil" in order to hold Appellee McCray Aluminum [] liable for Mr. Meerhoff and Mr. Little's injuries?

5.  Did the court err in striking Appellant[s'] experts, James L. Glancey, Ph.D., P.E. and Jack Vinson, Ph.D., P.E.?

6.  Did the court err in finding Appellants have not produced any relevant evidence from a qualified electrical engineer to prove the fire occurring at Donald McCray's property on October 29, 2012 was electrical in nature?

7.  Did the court err in finding Appellants have not established a cause of action against Appellee Penelec?

8.  Did the court err in finding Mr. Meerhoff and Mr. Little's "wanton comparative negligence" greatly exceeds the claims of negligence against Appellee Penelec and thus bars recovery?

Appellants' brief at 4-5.

Summary judgment may be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. Pa.R.C.P. 1035(b), 42 Pa.C.S.A. When considering a motion for summary judgment, the trial court must examine the record in the light most favorable to the non-moving party, accept as true all well-pleaded facts in the non-moving party's pleadings, and give him the benefit of all reasonable inferences drawn therefrom. Dibble v. Security of America Life Ins., 404 Pa.Super. 205, 590 A.2d 352 (1991); Lower Lake Dock Co. v. Messinger Bearing Corp., 395 Pa.Super. 456, 577 A.2d 631 (1990). Summary judgment should be granted only in cases that are free and clear of doubt. Marks v. Tasman, 527 Pa. 132, 589 A.2d 205 (1991). We will overturn a trial court's entry of summary judgment only if we find an error of law or clear abuse of discretion. Lower Lake Dock Co., supra.

DeWeese v. Anchor Hocking Consumer and Indus. Products Group, 628 A.2d 421, 422-423 (Pa.Super. 1993).

It is well-settled that a party may not defeat a motion for summary judgment by relying on the allegations of his complaint. Rather, he must present depositions, affidavits, or other acceptable documents that show there is a factual issue for a jury's consideration. Brecher v. Cutler, 396 Pa.Super. 211, 578 A.2d 481 (1990).

Id. at 424.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. [Lackner v. Glosser, 892 A.2d 21, 29 (Pa.Super. 2006)]; see Pa.R.C.P. 1035.2.[Footnote 3] If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied. Lackner, supra at 29[.]

[Footnote 3] Rule 1035.2 provides:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

Jones v. Levin, 940 A.2d 451, 453-454 (Pa.Super. 2007).

To prevail in a negligence suit, the complaining party must prove four elements:

1. A duty or obligation recognized by law.

2. A breach of the duty.

3. Causal connection between the actor's breach of the duty and the resulting injury.

4. Actual loss or damage suffered by complainant.

> Lux v. Gerald E. Ort Trucking, Inc., 887 A.2d 1281, 1286 (Pa.Super. 2005), appeal denied, 587 Pa. 731, 901 A.2d 499 (2006) (citation omitted and emphasis removed).

Id. at 454.

In their first issue on appeal, appellants argue that the trial court erred in finding that Mr. McCray did not have a legal duty to install smoke detectors and/or CO monitors in his private, non-commercial residence. Appellants argue that Mr. Meerhoff and Mr. Little had permission to be on the premises and should be considered licensees. (Appellants' brief at 18.) As licensees, appellants contend that Mr. McCray had a duty to protect them from unreasonable risks of foreseeable harm. (Id. at 19.) Appellants allege that the presence of working smoke detectors/CO monitors would have allowed them to escape the fire unscathed.

Here, it is not disputed that Mr. Meerhoff and Mr. Little had permission to use the farmhouse and were licensees.

> If a visitor to land is legally classified as a licensee,

>> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and ([c]) the licensees do not know or have reason

> to know of the condition and the risk involved. Restatement (Second) of Torts § 342.
>
> Liability will only be imposed if all of the criteria in § 342 are met. Miranda v. City of Philadelphia [166 Pa.Cmwlth. 181], 646 A.2d 71, 74 (Pa.Commw[Cmwlth].Ct.1994). As such, § 342 initially requires that the possessor of the land have actual or constructive notice of the allegedly dangerous condition.

Alexander v. City of Meadville, 61 A.3d 218, 221-222 (Pa.Super. 2012) (brackets in case citation in original).

Appellants in their complaint alleged that Mr. McCray, in failing to install smoke alarms and CO monitors, failed to comply with state, federal, county, and local building codes, rules, and regulations. However, as the trial court observed, "[Appellants] have failed to provide any statutory authority or case law requiring Defendant McCray to install [smoke alarms or CO] detectors in his private, non-commercial residence." (Opinion and Order, 8/19/16 at 3-4.) As appellee Mr. McCray points out, while there are numerous state statutes requiring smoke detectors and CO monitors in day-care facilities, assisted-living residences, schools, new multi-unit construction, etc., there are no statutes or regulations requiring a homeowner to install smoke detectors or CO monitors in his private, non-commercial residence. (Mr. McCray's brief at 14-15.)

Similarly, appellants have failed to cite any authority for the proposition that failure to install smoke alarms and/or CO detectors constituted a

"dangerous condition" for purposes of Section 342. In the court below, appellants relied on Echeverria v. Holley, 142 A.3d 29 (Pa.Super. 2016), appeal denied, 2017 WL 1078606 (Pa. 2017), and appeal denied, 2017 WL 1078750 (Pa. 2017), in which this court held that a landlord is under a duty to maintain his rental property in a safe condition which includes the provision of smoke detection devices. Id. at 36. We agree with the trial court that Echeverria is distinguishable because it involved a landlord's duty to his tenant. (Trial court opinion, 11/1/16 at 6.) Here, Mr. McCray was the owner of a private, non-commercial residence. (Id.) Mr. Meerhoff and Mr. Little were not his tenants. Therefore, Echeverria is not controlling. Again, appellants have cited no statutory or decisional authority for the proposition that the owner of a private, non-commercial residence has a duty to install and maintain smoke detectors or CO monitors. This is a question better left to the legislature, and in the absence of such authority, we decline to impose such a duty on owners of private residences.

Next, appellants argue that the trial court erred in finding that appellants failed to prove that Mr. McCray's farmhouse was not equipped with working smoke detectors/CO monitors without resorting to speculation. Appellants claim that there was a genuine issue of material fact as to whether or not functioning smoke detectors/CO monitors existed at the time of the fire. (Appellants' brief at 22.) However, as the trial court noted, the issue is moot because we have already determined that Mr. McCray was under no legal duty

to install and maintain smoke detectors/CO monitors in his private, non-commercial residence. (Opinion and Order, 8/19/16 at 5.) Whether there were actually working smoke detectors/CO monitors in the farmhouse is irrelevant in light of the fact that Mr. McCray had no duty to install them in the first place.

Appellants' next two issues on appeal relate to their claims against McCray Aluminum. First, appellants complain that the trial court erred in finding that they failed to respond to McCray Aluminum's request for admissions, and therefore, pursuant to Pa.R.C.P. 4014, the matters raised therein were deemed admitted. ". . . Pa.R.C.P. 4014(b) provides that all matters raised in a request for admissions are deemed admitted when a party fails to respond to the request within 30 days." Thomas v. Elash, 781 A.2d 170, 177 (Pa.Super. 2001); Innovate, Inc. v. United Parcel Serv., Inc., 418 A.2d 720, 723 (Pa.Super. 1980) ("A party on whom requests for admissions of fact are served runs the risk that the facts as set forth in the request for admissions will be conclusively binding on him if he chooses not to file an answer to the request for admissions or file objections to the request.").

Instantly, McCray Aluminum served its First Set of Requests for Admissions on the plaintiffs on March 17, 2016, three days before expiration of the discovery time period. Appellants failed to respond by filing answers or objections. Therefore, the matters in McCray Aluminum's requests for

admissions were deemed admitted, including that Mr. McCray was the sole owner of the property, that McCray Aluminum had no ownership interest in the property, and that McCray Aluminum did not design, construct, or maintain the farmhouse. This was a proper basis for McCray Aluminum's motion for summary judgment. See Innovate, 418 A.2d at 724 (defendant properly relied on unanswered requests for admissions of fact filed under Pa.R.C.P. 4014 as a basis for a motion for summary judgment (citations omitted)). While appellants complain that McCray Aluminum's requests for admissions were filed only 3 days before the discovery deadline, they have waived any objection by not responding.

In their second issue relating to McCray Aluminum, appellants argue that the trial court should have "pierced the corporate veil" to hold McCray Aluminum liable. Even assuming that this doctrine somehow applies as asserted by appellants, we do not need to address this issue because we have already determined that Mr. McCray had no duty to install smoke detectors/CO monitors in his private, non-commercial residence. If Mr. McCray had no duty to do so, certainly McCray Aluminum had no duty either. Furthermore, to the extent appellants alleged in their complaint that McCray Aluminum was responsible for installing faulty wiring, appellants' failure to respond to McCray Aluminum's requests for admissions results in those facts being admitted, including that no employee of McCray Aluminum was involved in the design, construction, or maintenance of the farmhouse.

We now turn to appellants' issues regarding Penelec. In their fifth issue on appeal, appellants claim that the trial court erred in striking the expert report of James L. Glancey, Ph.D., P.E., and Jack Vinson, Ph.D., P.E. We disagree.

> The admission of expert testimony is a matter committed to the discretion of the trial court and will not be disturbed absent an abuse of that discretion. Commonwealth v. Walker, 625 Pa. 450, 92 A.3d 766, 772 (2014). An abuse of discretion "is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." Id. at 772-73 (citation omitted).

Nobles v. Staples, Inc., 150 A.3d 110, 113 (Pa.Super. 2016).

Pennsylvania Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson; (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

> The determination of whether a witness is a qualified expert involves two inquiries:
>
> > When a witness is offered as an expert, the first question the trial court should ask is whether the subject on which the witness will express an opinion is so

> distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman. . . . If the subject is of this sort, the next question the court should ask is whether the witness has sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.

Wexler v. Hecht, 847 A.2d 95, 99 (Pa.Super. 2004), affirmed, 928 A.2d 973 (Pa. 2007) (quotation marks and citations omitted; ellipsis in original). "In other words, 'it may appear that the scope of the witness's experience and education may embrace the subject in question in a general way, but the subject may be so specialized that even so, the witness will not be qualified to testify.'" Id., quoting Dambacher v. Mallis, 485 A.2d 408, 419 (Pa.Super. 1984), appeal dismissed, 500 A.2d 428 (Pa. 1985) (additional citations omitted).

Appellants sought to introduce the expert report of Dr. Glancey and Dr. Vinson to prove that the fire was electrical in origin and that there should have been a reflective marker on the guy cable. According to Dr. Glancey, after the pickup truck hit the service pole, the guy cable deflected significantly, resulting in a substantial tensile or pulling force in the service wires connecting the pole to the transformer. Dr. Glancey opined that the dislodgment of the transformer on Mr. McCray's property caused an electrical surge into the farmhouse, energizing all outlets and appliances in the house with excess voltage and causing an electrical fire. (RR at 678-679.)

Neither Dr. Glancey, nor Dr. Vinson, who also signed the report, is an electrical engineer. Rather, they are mechanical engineers. Mechanical engineering is a separate and distinct discipline which involves the design, production, and operation of machinery and equipment, e.g. for the manufacturing industry. There is nothing to suggest that Dr. Glancey or Dr. Vinson have the necessary training, education, or experience to testify as experts in the fields of electrical engineering and/or fire cause and origin. The trial court permitted appellants ten days in which to identify a new expert in electrical engineering and/or fire cause/origin and they failed to do so. (Opinion and Order, 8/19/16 at 8.) The report of their other expert, Deborah A. Waller, P.E., failed to indicate that the fire was electrical in nature. (Id.) In fact, the state fire marshal, Pennsylvania State Trooper Dennis R. Lindenberg, was unable to determine the cause of the fire despite a thorough investigation. (Id.) Therefore, appellants failed to provide an expert report from a qualified electrical engineer to prove that the cause of the fire was electrical. (Id.)

In addition, although not binding precedent, the trial court noted that in a similar case from Cambria County, Dr. Glancey was precluded from testifying as an expert witness regarding electrical distribution systems because he did not possess the requisite knowledge, skill, training, or experience in the field of electrical engineering. (Trial court opinion, 11/1/16 at 13.) We find that the trial court did not abuse its discretion in precluding

Dr. Glancey, a mechanical engineer, from offering expert testimony in the fields of electrical engineering and/or fire cause/origin.

Finally, appellants argue that the trial court erred in finding that the wanton misconduct of Mr. Meerhoff and Mr. Little greatly exceeded any possible negligence that could be attributed to Penelec, thus barring recovery. The trial court determined that any potential recovery would be barred by Pennsylvania's comparative negligence statute, which provides, in relevant part, as follows:

> (a)   General rule.--In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa.C.S.A. § 7102(a). "Pennsylvania's comparative negligence statute does not bar recovery by the plaintiff as long as the plaintiff's causal negligence is not greater than that of the defendant." Terwilliger v. Kitchen, 781 A.2d 1201, 1209 (Pa.Super. 2001).

> [W]hen willful or wanton misconduct is involved, comparative negligence should not be applied. Our primary reason for so holding is the longstanding distinction Pennsylvania courts have made between willful or wanton conduct and negligent conduct.

Wanton conduct has been defined as "something different from negligence, however gross, different not merely in degree but in kind and evincing a different state of mind on the part of the tort feasor[."] Kasanovich v. George, 348 Pa. 199, 203, 34 A.2d 523, 525 (1943); Zawacki v. Pennsylvania Railroad Company, 374 Pa. 89, 97 A.2d 63 (1953); Geelen v. Pennsylvania Railroad Company, 400 Pa. 240, 161 A.2d 595 (1960); Stubbs v. Frazier, [454 A.2d 119 (Pa.Super. 1982)]. "Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." Kasanovich, supra at 203, 34 A.2d at 525. Wanton misconduct

> . . . means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences.

Prosser, Torts § 33 at 151 (2d ed. 1955) cited in Evans [v. Philadelphia Trans. Co., 212 A.2d 440, 443 (1965)]; Moss v. Reading Company, 418 Pa. 598, 212 A.2d 226 (1965). Antonace [v. Ferri Contracting Co., Inc., 467 A.2d 833 (Pa.Super. 1983)]. See also 57 Am.Jur.2d § 102.

Krivijanski v. Union R. Co., 515 A.2d 933, 936-937 (Pa.Super. 1986) (footnote omitted).

This court does not disagree with appellants that, ordinarily, questions of comparative negligence are for the jury. (Appellants' brief at 38.)

However, this is surely one of those rare cases where summary judgment on the issue of comparative negligence is appropriate.[2]  As the trial court stated:

> Furthermore, the evidence is clear that Mr. Meerhoff and Mr. Little's actions are significantly greater than the cause of action for negligence against Defendant Penelec.  First, Mr. Meerhoff and Mr. Little had been consuming alcohol the evening before the incident, with Mr. Meerhoff beginning to drink around 6:00 p.m. and Little beginning to drink around 9:00 p.m.  After they had run out of beer, Mr. Meerhoff and Mr. Little left around 1:00 -- 1:30 a.m. to buy more beer.  Sometime after, Mr. Meerhoff and Mr. Little arrived at Donald McCray's property.  While at Donald McCray's property, Mr. Meerhoff and Mr. Little were "race tracking like in a racecar form" and "whipping doughnuts and going in circles."  During this time, Mr. Meerhoff and Mr. Little "hit something."  Several photographs were taken at the scene after the fire by Corporal Matthew Bly, and these photographs depicted tire tracks, damaged electrical wires, a damaged hay wagon and other significant levels of vandalism.  Several photographs depicted some power lines lying on the ground and the electrical transformer hanging on the power pole with several cables torn off.  According to the Coroner's Toxicology Report to Police Agency, Mr. Meerhoff's Blood Alcohol Content ("BAC") was .244%, three (3) times the legal limit of .08%.  Thereafter, Mr. Meerhoff and Mr. Little entered Donald McCray's residence, at which time Mr. Little indicated the "lights were on."  Mr. Meerhoff and Mr. Little "wrestled around" for around fifteen (15) minutes before going to bed.  The actions of Mr. Meerhoff and Mr. Little rise far above the level of negligence Plaintiffs have alleged against Defendant

---

[2] At any rate, since the trial court properly excluded the expert report of Dr. Glancey and Dr. Vinson, appellants failed to prove the cause of the fire and that it was electrical in origin.  Mr. McCray did not observe any damage or malfunction of any electrical equipment on his property on October 28, 2012, the day before the fire, nor did he notify Penelec of any damage, defect, or malfunction of any electrical equipment.  Therefore, appellants failed to state a claim against Penelec.  (Opinion and Order, 8/19/16 at 9.)

> Penelec, which, as indicated above, is minimal, if not absent completely. Therefore, Plaintiffs' claims against Defendant Penelec are barred due to the actions of Mr. Meerhoff and Mr. Little on October 28th, 2012.

Opinion and Order, 8/19/16 at 9-10 (citations to the record omitted).

We agree. To the extent appellants could demonstrate a cause of action for negligence against Penelec, it was drastically exceeded by their own willful and wanton misconduct. There is no error here.

As we find the trial court did not err in granting summary judgment for the defendants/appellees and dismissing appellants' complaint with prejudice, we will affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2017

- 20 -